IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| THI OF PENNSYLVANIA AT GREENERY OF CANONSBURG, LLC<br><br>Plaintiff,<br><br>vs.<br><br>MONICA PARRILLA, AS ADMINISTRATRIX OF THE ESTATE OF STANLEY DUSCHAC, DECEASED,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. _____<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT TO COMPEL ARBITRATION

COMES NOW Plaintiff THI of Pennsylvania at Greenery of Canonsburg, LLC ("Greenery" or "Facility"), and for its cause of action, alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff is a Delaware limited liability company. Plaintiff's sole member is THI of Pennsylvania, LLC, which is itself a Delaware limited liability company. THI of Pennsylvania, LLC's sole member is THI of Baltimore, Inc., which is a Delaware corporation with its principal place of business in Maryland. Thus, for purposes of federal diversity jurisdiction, Plaintiff is a citizen of the States of Delaware and Maryland.

2. Defendant Monica Parrilla is a Pennsylvania citizen and a surviving daughter of Stanley Dushac, deceased.

3. Based on information and belief, Mr. Dushac was a Pennsylvania citizen at the time of his death and at all times relevant to this Complaint.

10181043

4. This Court has jurisdiction over the subject matter of this action and the parties hereto pursuant to 28 U.S.C. § 1332(a)(1) and 9 U.S.C. § 4 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This judicial district is a proper venue under 28 U.S.C. § 1391(b) because Defendant resides, and is subject to service of process, in this district and a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this district.

## FACTUAL BACKGROUND

6. On September 13, 2011, Mr. Dushac executed an Admission Contract with Plaintiff to secure his admission to, and obtain care and treatment from, the Facility. A true and correct copy of the Admission Contract is attached as **Exhibit A**.

7. On September 13, 2011, Mr. Dushac also executed a stand-alone, two-page "Voluntary Arbitration Agreement" ("Arbitration Agreement"), a true and correct copy of which is attached as **Exhibit B**. In the Agreement, which Mr. Dushac was directed to "***PLEASE READ CAREFULLY***" (Exhibit B at 1 (emphasis in original)), the parties expressly agreed that:

> [I]n the event of *any controversy or dispute between the parties*, arising out of or relating to [the] Facility's Admission Agreement, or breach thereof, or *relating in any way to [Mr. Dushac's] stay at [the] Facility, or to the provisions of care or services to [Mr. Dushac], including but not limited to any alleged tort, personal injury, negligence or other claim*; or any federal or state statutory or regulatory claim of any kind; or whether or not there has been a violation of any right(s) granted under State law (collectively, "Disputes"), and the parties are unable to resolve such through negotiation, then the parties agree that such Dispute(s) shall be resolved by arbitration.

(Exhibit B ¶ A(1.2) (emphasis added))

8. In the Arbitration Agreement, Mr. Dushac acknowledged that he was "not required to use the [] Facility for [his] healthcare needs and that there are numerous other health

care providers in [Pennsylvania] where [the] Facility is located that are qualified to provide such care. Execution of this Agreement is voluntary and not a condition of admission." (Exhibit B ¶ A(1.1)) The Arbitration Agreement provides that it "shall remain in effect for all care rendered to [Mr. Dushac] at [the] Facility." (Exhibit B at 2)

9. The Arbitration Agreement also provided that "[e]ach party shall have seven (7) business days from the execution of this Agreement to cancel the Agreement by notifying the other party in writing, by certified mail, return receipt requested, of its desire to cancel. [Mr. Dushac's] admission to [the] Facility and the services provided will not be effected [sic] by the exercise of this cancellation provision." (Exhibit B ¶ C(1.1)) Mr. Dushac did not exercise his right under this provision to revoke the Arbitration Agreement after he signed it.

10. The Arbitration Agreement provides that the arbitrator selected by the parties to resolve their dispute "must either be a retired Pennsylvania civil circuit court or federal judge or a member of the Pennsylvania Bar with at least ten (10) years of experience as an attorney." (Exhibit B ¶ A(1.3)) The Agreement also mandates that "[t]he arbitrator shall be independent of all parties, witnesses and legal counsel, and no officer, director, affiliate, subsidiary or employee of a party, witness or legal counsel may serve as an arbitrator in the proceeding." (Exhibit B ¶ A(1.3))

11. The Arbitration Agreement makes plain that "[t]he arbitrator shall hear and decide the controversy, and the decision shall be binding on all parties, and may be enforced by a court of competent jurisdiction." (Exhibit B ¶ A(1.7))

12. Above the signature line where Mr. Dushac signed his name, the Arbitration Agreement provides: "RESIDENT/REPRESENTATIVE UNDERSTANDS AND AGREES

3

THAT HE/SHE IS GIVING UP AND WAIVING HIS/HER RIGHT TO A JURY TRIAL." (Exhibit B at 2.)

13.     In the Admission Contract, Mr. Dushac acknowledged that he "received and read the Admission Handbook and *other Admissions materials* and understand[s] that these documents *are made a part of this [Admission Contract] by reference herein.*" (Exhibit A at 11, § XVI (emphasis added))  Thus, although the Arbitration Agreement was not a condition of Mr. Dushac's admission to the Facility, upon execution, it was incorporated into, and became a part of, the Admission Contract.  Thereafter, Mr. Dushac's duty to comply with the Arbitration Agreement was a term of the Admission Contract pursuant to which the Facility agreed to provide care and treatment to him.  (Exhibit A ¶ I(5) ("By signing this [Admission Contract], Resident . . . agree(s) to abide by the terms and conditions set forth in this Agreement . . . ."))

14.     Upon information and belief, Mr. Dushac died on October 14, 2011.

15.     Upon information and belief, Defendant later was appointed as the administrator of Mr. Dushac's estate.

16.     On September 13, 2013, Defendant filed a civil action in the Court of Common Pleas of Allegheny County, Pennsylvania, *Parrilla v. UPMC Mercy Hospital et al.*, Civil Division, Docket No. GD 13-013058 ("State Court Action").  A true and correct copy of Defendant's complaint in the State Court Action is attached as **Exhibit C**.  In the State Court Action, Defendant asserts negligence as the basis for her wrongful death (Count V) and survivorship claims (Count VI) against the Greenery, which are predicated on allegedly deficient care and treatment that the Facility rendered to Mr. Dushac during his residency.  (Exhibit C at 18-28)

## CAUSE OF ACTION TO COMPEL ARBITRATION
### (Federal Arbitration Act, 9 U.S.C. § 4)

17. Plaintiff expressly incorporates by reference the allegations set forth above, as if set forth fully herein.

18. The Federal Arbitration Act ("FAA") mandates arbitration of claims that are subject to a written arbitration agreement and that affect interstate commerce. Specifically, the FAA requires arbitration where (a) there is a valid, written agreement to arbitrate, and (b) a dispute is within the scope of the agreement. Section 2 of the FAA provides that:

> A written provision in any . . . contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . ***shall be valid, irrevocable, and enforceable***, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added). Section 4 of the FAA provides, in pertinent part, that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4.

19. In actions involving written arbitration agreements, Section 3 of the FAA requires that such actions be stayed pending resolution of the arbitration process:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, ***shall*** on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement,

5

providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

20. Mr. Dushac signed the Arbitration Agreement and the Admission Contract in connection with his admission to the Greenery. He therefore was bound by the terms of those agreements. As the administrator of Mr. Dushac's estate, Defendant stands in the shoes of Mr. Dushac insofar as he was a party to, and legally obligated to comply with, the Arbitration Agreement and Admission Contract. Accordingly, Defendant is bound to resolve "*any* controversy or dispute [with the Greenery], arising out of . . . or *relating in any way* to [Mr. Dushac's] stay at [the] Facility, or the provisions of care or services to [Mr. Dushac]," by arbitration. (Exhibit B ¶ A(1.2) (emphasis added))

21. Defendant's causes of action against the Greenery in the State Court Action are within the scope of, and subject to, the Arbitration Agreement. The Arbitration Agreement bars Defendant's assertion of these claims in any civil action and, instead, requires that they be resolved by arbitration. Defendant's filing of the State Court Action is in direct violation of the Arbitration Agreement and, thus, a breach of the Admission Contract as well (of which the Arbitration Agreement is a part).

22. Defendant also is barred from contesting the validity of the Arbitration Agreement by the doctrine of equitable estoppel. Although the Arbitration Agreement was voluntary and not a condition of Mr. Dushac's admission to the Greenery, upon execution, it was incorporated by reference into, and became a part of, the Admission Contract. Thereafter, Mr. Dushac's compliance with the Arbitration Agreement was a term and condition of the Facility's agreement to provide care and treatment to him under the Admission Contract. Because Mr. Dushac received the direct benefits of care and treatment at the Facility pursuant to the

6

10181043

Admission Contract, Mr. Dushac (and now Defendant, as the administrator of his estate) is precluded from repudiating the Arbitration Agreement that was a part of the Admission Contract. Accordingly, Defendant is barred from pursuing her claims against the Greenery in a judicial forum and instead must submit those claims to arbitration.

23. The Admission Contract and Arbitration Agreement are contracts "evidencing a transaction involving commerce" within the meaning of 9 U.S.C. § 2. Among other things, Mr. Dushac was a Medicare patient, like other residents at the Facility. Medicare paid the costs of Mr. Dushac's care, and the care of other residents, during his residency. In addition, the Greenery was certified to, and did, receive payments from the Pennsylvania Medicaid program, a substantial portion of which is funded by the Federal Government. The Greenery also purchased equipment, goods and services from vendors in other States that were used for the care and treatment of Mr. Dushac and other residents. These activities, in the aggregate, affect and involve interstate commerce, thus subjecting the Arbitration Agreement to the FAA.

24. Accordingly, pursuant to the Arbitration Agreement, FAA and applicable law, the Greenery is entitled to an order compelling Defendant to submit her claims against the Facility to arbitration and staying Defendant's claims against the Facility in the State Court Action.

**PRAYER FOR RELIEF**

WHEREFORE PREMISES CONSIDERED, Plaintiff is entitled to, respectfully prays for, and demands a judgment:

A. Ordering Defendant to arbitrate her claims against the Greenery in the State Court Action, in accordance with the Arbitration Agreement;

B. Upon determining that the claims Defendant has asserted against the Greenery in the State Court Action are subject to the Arbitration Agreement, staying the State Court Action

10181043

from further proceedings as to the Greenery pending a resolution of this matter through the arbitration process;

C.  Staying further proceedings in the action *sub judice* pending the conclusion of arbitration of Defendant's claims against the Greenery or, alternatively, dismissing this action without prejudice; and

D.  Such other relief as the Court may deem just and proper.

Dated: April 15, 2014

Respectfully submitted,

BUCHANAN INGERSOLL & ROONEY PC

By: /s/ William J. Moorhead
    Eugene A. Giotto, Esq.
    Pa. Id. #58286
    William J. Moorhead, Esq.
    Pa. Id. #52761

One Oxford Centre, 20th Floor
301 Grant Street
Pittsburgh, PA 15219
Telephone: (412) 562-8800
Facsimile: (412) 562-1041

*Attorneys for Plaintiff THI of Pennsylvania at Greenery of Canonsburg, LLC*